IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| **CODY M. BAKOS,**<br>c/o Cornerstone Law Firm<br>5821 NW 72nd Street<br>Kansas City, MO 64151<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>**AVIATION TECHNICAL SERVICES,**<br>**INC.,** a Washington corporation,<br>*Serve Registered Agent:*<br>NATIONAL REGISTERED AGENTS,<br>INC.<br>120 South Central Ave.<br>Clayton, MO 63105<br><br>　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: _____ |

## COMPLAINT FOR DAMAGES

COMES NOW, Plaintiff Cody Bakos, by and through his attorney, and for his cause of action against Defendant Aviation Technical Services, Inc. alleges as follows:

### Parties and Jurisdiction

1. This is an employment case based upon and arising under the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. §§ 4301 *et seq.,* and the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*

2. Plaintiff Cody Bakos is a resident of the state of Missouri.

3. Defendant Aviation Technical Services, Inc. ("ATS") provides aircraft repair, maintenance, and overhaul services to commercial airlines and is, and was at all relevant times, a for-profit corporation incorporated under the laws of Washington with its corporate headquarters located at 3121 109th St. S.W., Everett, Washington, 98204.

4. At all relevant times, ATS operated a place of business located at 11268 North Convair Drive, Kansas City, Missouri 64153.

5. ATS is registered with the Missouri Secretary of State to conduct business within the state of Missouri; its Registered Agent is National Registered Agents, Inc., 120 South Central Avenue, Clayton, MO 63105.

6. ATS pays salary or wages for work performed and has control over employment opportunities.

7. ATS is an employer within the meaning of USERRA.

8. At all relevant times, ATS employed fifty (50) or more employees within a seventy-five (75) mile radius of the facility at which Plaintiff worked.

9. At all relevant times, ATS was engaged in interstate commerce.

10. ATS is a covered employer under the FMLA.

11. Jurisdiction is proper in the Western District of Missouri pursuant to 28 U.S.C. § 1331 as some or all of Plaintiff's claims arise under the laws of the United States and pursuant to 38 U.S.C. § 4323(b)(3).

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this claim occurred within this judicial district.

**General Allegations Common to All Counts**

13. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

14. Plaintiff was hired by ATS as a Systems Mechanic II at the company's Kansas City, Missouri location on or about August 18, 2018.

15. At the time he was hired by ATS, Plaintiff was serving in the United States Air Force Reserve.

16. Plaintiff continued to serve in the United States Air Force Reserve throughout the entirety of his employment with ATS.

17. Although ATS touts its "dedication to military aviation careers" on its website[1], Plaintiff was not aware of any other ATS employees at the Kansas City location who were serving as reservists in any branch of the United States military, or who were active members of the National Guard.

18. Plaintiff worked a Systems Mechanic II throughout the entirety of his employment with ATS.

19. As a Systems Mechanic II, Plaintiff was guaranteed a minimum of 40 hours of work per week, and he typically worked between 50-60 hours per week.

20. Plaintiff was assigned to work the first shift from Sunday through Thursday each week.

21. During his employment with ATS, Plaintiff's service in the Air Force Reserve typically required him to attend a drill weekend once a month, as well as one, annual three-week tour of duty.

22. When Plaintiff had a drill weekend, he was not able to work his regularly scheduled shift on Sunday.

23. Plaintiff provided ATS with advance notice and timely documentation for any leave he required for his Air Force Reserve service, including copies of his orders or printouts of information regarding his scheduled drill weekends.

---

[1] http://ats.excelym.com/careers/post-military-careers/ (last accessed on June 15, 2021).

24. Despite the documentation he provided to ATS, Plaintiff became aware of some instances where ATS did not properly attribute days he was absent for Air Force Reserve service as a part of his military leave.

25. Supervisors and managers at ATS also periodically asked Plaintiff why he was absent from work so often, expressed frustration about his need for leave, and made disparaging comments about the frequency or duration of his absences.

26. For example, in 2019, when Plaintiff went to the company's Human Resources office to drop off his leave paperwork for the three-week annual tour of duty he was required to attend as a part of his Air Force Reserve service, a supervisor named Mike asked Plaintiff about the paperwork he was submitting.

27. When Plaintiff told Mike that he was submitting paperwork requesting a three-week leave, Mike seemed incredulous and responded, "no one is gone that much from work!" Mike also told Plaintiff, "you are probably going to get fired for missing so many days of work." Plaintiff explained to Mike that the leave was related to his military orders.

28. In early March 2020, Plaintiff requested intermittent leave under the FMLA related to his wife's pregnancy and the anticipated birth of his daughter, who was due to be born in April 2020.

29. However, after Plaintiff originally requested intermittent leave, his wife unexpectedly developed a serious and life-threatening pregnancy complication known as HELLP Syndrome, and their daughter was born pre-term on March 10, 2020.

30. Because of her HELLP Syndrome diagnosis, Plaintiff's wife required additional postpartum care and ongoing monitoring for a period of several weeks; additionally, Plaintiff's infant daughter initially had to stay in the Neonatal Intensive Care Unit ("NICU") of the hospital,

4

and due to her pre-term birth and related concerns about her immune system, Plaintiff and his family were informed they would need to take additional precautions to prevent their infant daughter from potential infection exposure.

31. Consequently, Plaintiff requested, and was approved for, a continuous leave of absence under the FMLA for the postpartum care of his wife and daughter from approximately March 9, 2020 through approximately June 1, 2020.

32. Approximately one to two weeks after his daughter's birth, in mid-to-late March 2020—and while Plaintiff was out on approved FMLA leave—Plaintiff received a letter from ATS informing him that he was being furloughed due to the slow down of the company's business caused by the COVID-19 pandemic.

33. The letter Plaintiff received from ATS also stated that his furlough was anticipated to last for approximately three months, with an anticipated call-back date of July 24, 2020.

34. However, approximately two weeks later—in early April 2020, and while he was still out on approved FMLA leave—Plaintiff received a call from someone in upper management at ATS who informed him that rather than just being furloughed for a period of time, his position with the company was actually going to being terminated as a part of the company's reduction in force.

35. Plaintiff's employment with ATS was terminated before the expiration of his approved FMLA leave of absence.

36. ATS has never rehired Plaintiff, recalled him to work, or offered Plaintiff the opportunity to be rehired for his prior position.

37. Plaintiff is aware of other Systems Mechanics who were furloughed rather than permanently laid off from their positions at ATS, and who were ultimately called back to work for the company in 2020.

38. Upon information and belief, unlike Plaintiff, these other Systems Mechanics were not members of the military and/or were not taking approved FMLA leave as of April 2020.

39. Plaintiff applied for an advertised open Interiors Mechanic position with ATS in late January or early February of 2021.

40. Despite the fact that Plaintiff is an aerospace propulsion technician with extensive experience in jet engine mechanics, and thus, highly qualified—if not over-qualified—to be an Interiors Mechanic, ATS did not hire Plaintiff for that position.

41. In late January 2021, Plaintiff also applied for a position with TechFlyte, a company that provides contract labor for ATS. TechFlyte initially indicated it would offer Plaintiff a contract position performing Airframe and Powerplant Mechanic services at ATS, but later informed Plaintiff that he would not be receiving that placement.

42. Upon information and belief, ATS declined to have Plaintiff placed as a contract Airframe and Powerplant Mechanic through TechFlyte.

## COUNT I
### Violation of USERRA, 38 U.S.C. § 4301 *et seq.*
### Discrimination Against Persons Who Serve in the Uniformed Services

43. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

44. At all times relevant, Plaintiff served in the Air Force Reserve, and is therefore, a uniformed servicemember covered under USERRA.

45. ATS terminated Plaintiff's employment in April 2020.

46. ATS failed to hire Plaintiff for an Interiors Mechanic position he applied for in late January or early February 2021.

47. Plaintiff's membership in, performance of services for, and obligation to perform service in the Air Force Reserve was at least a motivating factor in the decision ATS made to terminate his employment in April 2020, and to not hire him for an Interiors Mechanic position in late January or early February of 2021.

48. At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of ATS, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized or ratified by ATS, thus making ATS liable for said actions under the doctrine of *respondeat* superior.

49. ATS failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees.

50. ATS failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including USERRA.

51. As shown by the foregoing, as a result of his termination, Plaintiff suffered intentional discrimination at the hands of the ATS in violation of USERRA.

52. As a direct and proximate result of the actions and/or omissions of ATS, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

53. ATS failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under USERRA.

54. ATS knew or showed reckless disregard for whether its conduct toward Plaintiff was prohibited by USERRA.

55. ATS's conduct towards Plaintiff was willful, thus justifying an award of liquidated damages under 38 U.S.C. § 4323(d)(1)(C) in an amount equal to the lost wages and benefits he has incurred as a result of ATS's termination of his employment and failure to rehire him to his previous position or hire him for the Interiors Mechanic position he sought.

56. Plaintiff is entitled to recover reasonable attorney's fees and litigation costs from ATS as provided in 38 U.S.C. § 4323(h).

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against ATS for economic damages, including but not limited to lost wages and lost benefits; for liquidated damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT II
## Violation under 29 U.S.C. § 2615(a)(1)
## Interference with FMLA Entitlement

57. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

58. At all relevant times, Plaintiff was an eligible employee pursuant to the FMLA.

59. Plaintiff sought leave under the FMLA in March 2020 for the serious health conditions of his wife and infant daughter.

60. By terminating Plaintiff's employment in April 2020 while he was out on approved FMLA leave related to the serious health conditions of his wife and infant daughter, ATS attached a negative consequence to Plaintiff's exercise of FMLA rights, and thus, interfered with Plaintiff's entitlement to FMLA leave.

61. By terminating Plaintiff's employment, ATS interfered with Plaintiff's right to take FMLA leave.

62. At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of ATS, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized or ratified by ATS, thus making ATS liable for said actions under the doctrine of *respondeat* superior.

63. ATS failed to make good faith efforts to establish and enforce policies to prevent illegal interference with its employees' FMLA rights.

64. ATS failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the FMLA.

65. As shown by the foregoing, ATS engaged in a willful violation of the FMLA, and its actions were not in good faith.

66. As a direct and proximate result of the actions and/or omissions of ATS, Plaintiff has been deprived of income as well as other monetary and non-monetary benefits.

67. Pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii), Plaintiff is entitled to recover liquidated damages from Defendant.

68. Pursuant to 29 U.S.C. § 2617(a)(3), Plaintiff is entitled to recover reasonable attorneys' fees from Defendant.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendant for economic damages, including but not limited to back-pay and lost benefits; for equitable relief, including but not limited to front-pay and injunctive relief; for liquidated damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as

9

Case 5:21-cv-06088-RK   Document 1   Filed 07/30/21   Page 9 of 11

allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

### COUNT III
### Violation under 29 U.S.C. § 2615(a)(1)
### FMLA Discrimination

69. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

70. At all relevant times, Plaintiff was an eligible employee pursuant to the FMLA.

71. Plaintiff engaged in an activity protected under the FMLA when he sought leave in March 2020 for the serious health conditions of his wife and infant daughter.

72. In April 2020, ATS selected Plaintiff's position for termination as a part of its reduction in force rather than leaving his position furloughed and subject to later recall to work.

73. A causal connection exists between the aforementioned adverse actions and Plaintiff's exercise of his FMLA rights.

74. At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of ATS, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized or ratified by ATS, thus making ATS liable for said actions under the doctrine of *respondeat* superior.

75. ATS failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees.

76. ATS failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the FMLA.

77. As shown by the foregoing, ATS engaged in a willful violation of the FMLA, and its actions were not in good faith.

78. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been deprived of income as well as other monetary and non-monetary benefits.

79. Pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii), Plaintiff is entitled to recover liquidated damages from Defendant.

80. Pursuant to 29 U.S.C. § 2617(a)(3), Plaintiff is entitled to recover reasonable attorneys' fees from Defendant.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendant for economic damages, including but not limited to back-pay and lost benefits; for equitable relief, including but not limited to front-pay and injunctive relief; for liquidated damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

### Demand for Jury Trial

Plaintiff requests a trial by jury on all counts and allegations of wrongful conduct alleged in this Complaint.

Respectfully Submitted,

CORNERSTONE LAW FIRM

By: /s/ *M. Katherine Paulus*
M. Katherine Paulus   MO BAR 60217
m.paulus@cornerstonefirm.com
Joshua P. Wunderlich MO BAR 64254
j.wunderlich@cornerstonefirm.com
5821 NW 72nd Street
Kansas City, Missouri 64151
Telephone          (816) 581-4040
Facsimile          (816) 741-8889

ATTORNEYS FOR PLAINTIFF